

# The Attorney General of Texas

**JIM MATTOX**
Attorney General

August 13, 1984

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

01 Texas, Suite 700
.ouston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Lyndon L. Olson, Jr.
Chairman
State Board of Insurance
1110 San Jacinto Boulevard
Austin, Texas    78786

Opinion No.  JM-187

Re:   Reconsideration of JM-88:
Whether the Insurance Code
per se prohibits certain finan-
cial arrangements between a life
insurance company and its sub-
sidiary which is compensated on
a percentage of annual premiums
written

Dear Mr. Olson:

You have requested a reconsideration of JM-88 regarding whether
all financing arrangements between a parent life insurance company and
an affiliate which are based on a fee computed on a percentage of
annual premiums written are per se prohibited by article 3.68, or
whether they are subject to the fair and reasonable test set out in
article 1.29 and article 21.49-1, section 4, of the Texas Insurance
Code.  You have not raised any question about the reasoning of JM-88
that article 3.68 applies to arrangements between foreign corporations
regarding out of state business, and we reaffirm the conclusion of
JM-88 as to that matter.  However, upon reconsideration, we withdraw
those portions of the reasoning and conclusions of JM-88 which hold
that any arrangement by which a life insurance company pays a fee
based on the number of policies sold, to a subsidiary having the same
president and secretary as the parent company per se violates article
3.68 of the Texas Insurance Code.

The question addressed by JM-88 asked whether a life insurance
company was permitted to compensate another corporation with officers
in   common   for   the   provision   of   certain   services,   when   such
compensation was based on a percentage of net premiums received by the
insurance company from non-Texas business.  You advised that it was
the  long-standing  construction  of  your  agency  that  article  3.68
prohibited  certain  "officers"  of  a  life  insurance  company  from
receiving any compensation based on a percentage of the business
produced by their company.  Our attention was called to a letter dated
May 29, 1926, from an assistant attorney general regarding article
4745, V.T.C.S., which was later transferred unchanged to article 3.68
of the Insurance Code.  See Attorney General Letter Opinion Book 281
(1926), page 106.

The only other application which we found of article 3.68, also in its prior codification as article 4745, is contained in Attorney General Opinion O-5913 (1944). Neither of those opinions dealt with the meaning of the prohibitory language in the statute as applied to the situation at issue in your request.

No legislative history provides guidance as to the meaning of the statutory language which was originally section 7 of a 1909 enactment, other than the 1909 title, which indicates that the statute was one "making it unlawful to pay certain persons for procuring insurance." (Emphasis added). Acts 1909, 31st Leg., 2d C.S., ch. 25, at 448. Nor does the subject matter of the remainder of that act give any further indication as to its purpose. Hence, we must ascertain the meaning and intention of the legislature from the language of article 3.68 as it has existed unchanged for over seven decades. See 53 Tex. Jur. 2d Statutes §130 (1964).

The language in question prohibits the payment to certain "officers" of "any commission or other compensation" if payment is (1) contingent upon the writing or procuring of any policy of insurance in such company; or (2) [contingent upon] procuring an application therefor by any person whomsoever; or (3) contingent upon the payment of any renewal premium; or (4) [contingent] upon the assumption of any life insurance risk by such company. Excluded from this prohibition of payment resulting from the listed actions are agents and solicitors. We think this exclusion is significant and is indicative of the objective of this statute. An insurance agent is routinely compensated by commissions based on his rates. Article 3.68 obviously prohibits payments to certain specified non-sales personnel -- i.e. "president, vice president, secretary, treasurer, actuary, medical director . . . or . . . any officer of the company" -- for the types of activities listed above, all of which constitute discrete steps in the sale of life insurance policies.

We think these references to specific steps in the process of life insurance sales clarify the meaning of the use of the otherwise ambiguous word "any" in the enumeration of each action. See Black's Law Dictionary 86 (5th ed. 1979). The nature and context of this list indicate that the prohibition is directed at particular, individual transactions and was intended to prevent only conflicts of interest between those persons who produce applications for insurance business in order to receive commissions therein, and those persons who have the responsibility to approve the applications for insurance on behalf of such companies and thereby bind them on the policy.

Indeed, two other Insurance Code provisions adopted in 1971 and otherwise unnecessary or conflicting support this result. Both article 1.29, a broad conflict of interest statute, and article 21.49-1, a comprehensive regulatory scheme for insurance holding company systems test the propriety of transactions within insurance holding company systems by standards of fairness, reasonableness, and

other equitable bases.  For example, section 1(c)(5) of article 1.29 allows:

> (A) Any transactions within an insurance holding company system by insurers with their holding companies, subsidiaries or affiliates that are not prohibited by law, that meet the test of being fair and proper, and that are regulated by other statutes; and (B) other transactions or arrangements not prohibited by law that meet the test of being fair and proper as prescribed by rules and regulations adopted by the State Board of Insurance.

Likewise, section 4, subsections (a)(1), (a)(2), and (d)(2)(iii) of article 21.49-1 establishes that such transactions as "rendering of services on a regular or systematic basis" are governed by standards including "fair and equitable" terms and "reasonable" charges and fees.  Neither statute prohibits, per se, payments to the subsidiary service corporation based on the amount of annual net premiums issued, this being a measure of the value of work done by the affiliate for the parent company.

We see no basis for concluding that article 3.68 ever prohibited payments such as those at issue here.  Transactions such as those you have inquired about which are based on the volume of business transacted are not prohibited by article 3.68.

### S U M M A R Y

> A life insurance company may base its payment to a wholly owned subsidiary corporation, for services rendered by the affiliate corporation, on the net premiums received by the parent life insurance company without violating article 3.68, so long as the arrangement is consistent with article 1.29 and article 21.49-1, section 4, of the Insurance Code.

Very truly yours

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Colin J. Carl
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
David Brooks
Colin Carl
Susan Garrison
Henry Robinson
Nancy Sutton
Bruce Youngblood